and we'll move now to the next case on the calendar. That is United States v. Cabrera. Mr. Habib, are you on the line? I am. Good morning, Your Honors. Okay, good. I can see you. And Ms. Sassoon? Yes, good morning, Your Honors. Okay, great. So Mr. Habib, you have reserved two minutes for rebuttal, I believe. So you've got eight minutes now. Thank you. May it please the Court, Daniel Habib, Federal Defenders of New York, on behalf of John Cabrera. Straightforward legal errors deprived Mr. Cabrera of a fair trial on both elements of his entrapment defense. First, on the inducement element, the District Court neglected settled precedent, holding that some evidence of government initiation of the crime suffices. Instead, the Court imposed a heightened burden, requiring the jury to make a finding that Cabrera, that the government, quote, initiate the charged drug sales. Second, on the predisposition element, the District Court admitted lay opinion testimony from a DEA agent that Cabrera was more experienced than, quote, the average drug dealer. That testimony was based on specialized knowledge acquired in the course of the agent's other drug investigations, and thus violated Rule 701. These legal errors compromised the jury's consideration of both elements of Cabrera's sole defense, and this Court should therefore vacate the judgment of conviction and remand for a new trial. Can I ask you, Mr. Habib, suppose we have a case, and this may be one of them, where there is clearly some evidence of inducement because the defendant testifies that I was induced. And so that's there. And the jurors go back in the jury room, and they say, that fellow said he was induced. The other witness for the government said he never brought this up. It was the defendant who proposed it. I thought, says the juror number one, I thought the defendant was totally lying. And the other juror said, absolutely, we all agree. What is the jury supposed to do then? Do they have to go forward and consider predisposition, or can they stop? So just to be clear, in Your Honor's hypothetical, the jurors are in disagreement about that? No, not in disagreement. They agree. They are unanimous. They all conclude that there was no inducement. Is the right thing for them to do to go ahead and consider predisposition anyway? Or is it open to them, and is it indeed what the law requires for them to stop right there? No possibility of entrapment because there was no inducement. If the jurors conclude that there's been no evidence? No, no, there was induced. There's clearly evidence. The defendant said he was induced. The government's witness, the informer, says, no, I never raised this subject at all until he brought it up. And the jury decides. They believe the government witness. Do they go forward, or do they stop? So I think in that situation, Your Honor, the jury... I think I would put it this way, Your Honor. The jury can be said in that instance to have determined that there has been no credible evidence. Right, exactly. And this court has said that the formulation's credible evidence and some evidence are virtually equivalent. And so in a case where the only evidence of inducement is the uncorroborated testimony of the defendant, and the jury finds that that testimony is not credible, then yes, the jury can terminate the entrapment inquiry on that part. So then why weren't they instructed correctly? That if they don't think that there was inducement, it's done? Because that's not the instruction they were given, Your Honor. The correct instruction, as set forth in a number of this court's cases, is that if there is some evidence or credible evidence of inducement, and the was, in the form of Mr. Cabrera's testimony, that the jury must then move on to consider the predisposition. I'm sorry, maybe I misunderstood. I thought you just answered the question the other way and said the jury is supposed to stop if they find no credible evidence of inducement, which you said was the same as if there is some evidence? No, Your Honor, let me clarify. The correct instruction, as this court has several times said, is if there is some evidence of inducement, the jury is to consider the predisposition wrong. But let me interrupt you. I thought a minute ago you just said it really properly should be some credible evidence, right? Because it can't be enough that it's just some evidence, because even if it's completely incredible, the defendant would get the benefit of an entrapment. And again, this court has said that the formulations, some evidence and credible evidence are equivalent. And so in the instance where there is uncorroborated testimony with respect to inducement, or indeed testimony as to inducement that is contradicted by documentary evidence or a prior inconsistent statement, it's open to the jury to make a determination that the evidence used has not been credible and has not carried the burden. But that's not what the district court instructed the jury here. The district court imposed a heightened burden here. The district court told the jury that it was to consider the predisposition prong only upon a finding that the government, quote, did initiate these charge transactions. It did so at the government's invitation. And it did so because the government told the district court that that instruction was necessary to heighten the burden of proof above the some evidence standard that this court's cases have approved. Well, what the what the judge first said was, if you find no evidence of inducement, you stop. But if you find he was induced now, that leaves open, it seems to me, at least if you're Mr. Spock and you're rigorously logical and not like most people, that leaves open the interesting question. What do you do if there is some evidence introduced of inducement? So I don't follow the first part of the instruction. I don't stop there. But then I'm supposed to apply the second thing, which is was he induced, in fact, and now I'm in total equipoise about what I believe and what I don't believe. And so that that situation is not explicitly covered by this instruction, it seems to me. Or maybe that's the situation in which you're saying the jury will read this instruction and say, well, if I'm in completely in equipoise as to whether there was inducement, then I don't find he was induced and therefore I don't have to consider predisposition, notwithstanding that I wasn't told to stop there in that setting. Your Honor, so let me say a few things. First of all, this this case does implicate precisely that equipoise situation. Indeed, that's how Judge Vaila assessed the evidence on the inducement prong of sentencing. So it was critical that Judge Vaila deliver a correct instruction on the inducement prong. We know from this court's decisions in Graver, Martinez, Carcano, and Dunn that some evidence of inducement, short of a conclusive finding of inducement, suffices to trigger the jury's obligation to consider the predisposition prong. And so if in this case the jurors were in equipoise, they should have considered the predisposition prong. Your Honor's earlier question about credible evidence, my answer to that presupposed that the jurors had determined there was zero credible evidence of inducement and therefore no evidence of inducement. No, just that it's outweighed by the other evidence. We choose to believe one person rather than another. That's not exactly no evidence or something that's incredible as a matter of law. That's just they made a determination that they think he was in fact induced, or they don't think he was in fact induced. Well, so let me say on that point, Your Honor, the evidence in this case under this court's decision in Martinez-Carcano was ample to support the jury's consideration of predisposition. In Martinez-Carcano, as here, we have conflicting testimony as to who first proposed the crime. And thereafter, we have the informant negotiating the terms of payment for the crime and carrying out the plans to commit the crime. And on those facts, even in Martinez-Carcano, a case where this court said the jury presumably disbelieved the defendant, on those facts, this court said that there had been ample evidence of inducement for purposes of the entrapment defense. And so that's this case. And so because we're in that zone, because we're in that intermediate zone, where there has been some evidence of inducement, it was absolutely critical that the district court get this instruction right. It didn't. It heightened the standard of proof required above what this court's precedents demand. And then the government, in its jury argument, urged the jury to take this precise offhand. It urged the jury to reject Cabrera's entrapment defense on the inducement prong alone. Okay. I am happy to address other questions that the court has, but I see them over time. All right. So you've reserved two minutes for rebuttal. We'll hear from Ms. Sassoon. May it please the court. My name is Danielle Sassoon, and I represent the United States on about the scenario where there is no credible evidence. And this highlights the untenable position that the defense is taking, where right now during argument and also in the reply brief on page nine, Cabrera argues that no credible evidence is the equivalent of no evidence at all. And that's plainly not the case. And that also highlights why the instruction... is the same as some evidence. That is to say, you don't have to bother with some evidence unless some members of the jury find it's credible. Correct, Your Honor. And that's why some evidence and credible evidence are simply not the same thing as any evidence, which is essentially what was requested at the charge conference below. There was no objection to the omission of a some evidence instruction. And instead, Cabrera requested the insertion of the word evidence, which would include evidence that is not credible, which goes beyond what the law requires. Well, if I believe that the evidence is credible, haven't I made a finding that there was inducement? The guy said he was induced, and I believe him. It was credible. Now I've made a finding that he was induced. In the end of the day, after analyzing all the contrary evidence, I conclude that no, he wasn't so credible after all. The other guy was more credible. The overwhelming burden he looked like is sort of honest guy. But when you really look at all the proof, I come to the conclusion that I don't believe him after all. I'm just having trouble understanding how I find the evidence credible, but don't then find by a preponderance of the evidence that what the credible person told me is what happened. Your Honor, if the jury concludes that the evidence was credible, then the inducement prong has been satisfied by the defendant. But the instructions here did not place the jury in equipoise, as defense counsel just argued, because the jury instruction has to be considered as a whole. And in addition to the instruction that if there is no evidence of inducement, the entrapment inquiry ends, is the beginning of the which told the jury that the question before them was whether there was any evidence of inducement. That was the question they were told to consider. So that clearly defined the choice before the jury as between no evidence and any evidence, which is why in fact, the instruction that the jury ultimately received was in fact more favorable to Cabrera. Because if anything, it put the jury in a position where if it concluded that Cabrera testified and constitute any evidence of inducement, and therefore they would move on to the predisposition prong. I'm sorry. Go ahead. Well, I mean, the judge started out asking the jury to consider whether there was any evidence, but then said that if there's no evidence, well, that's one thing. But the alternative to being no evidence is actually making a finding that the government did initiate the offense. And it seems to me that that's leaving a big hole in there. And in there is the prospect that if you only listen to one side, there's a question about it, in which case the government undertakes its burden to prove beyond a reasonable doubt that this person acted voluntarily. Judge Jacobs, it's the government's position that there's actually no hole because the choice was between no evidence and everything else. And that's even clearer in light of the fact that the framing question was whether there was any evidence of inducement. Well, suppose some of the jurors thought that there was credible evidence. It's not certain, but there's some credible evidence. And other jurors thought that there was some credible evidence, but they didn't quite believe it. Why shouldn't the government be put to its test, to its burden of proving beyond a reasonable doubt that it did not initiate the offense? I mean, how difficult should that be for the government to prove beyond a reasonable doubt that it is not the inspirer of the crime? Your Honor, under these jury instructions, it's the government's position that for any juror that concluded that there was credible evidence of inducement, that they would have then moved on to consider the predisposition prong. And that's because they were only told that in the event of no evidence of inducement, should they stop the entrapment inquiry. In all other events, the analysis would move on to predisposition, both because that's the alternative to no evidence and because the court said, you must ask whether there's any evidence of inducement. And that's exactly what happened. Suppose they're in the middle. They hear some evidence, but they don't know whether the government did initiate the offense. What do they do then? Your Honor, in the context of these jury instructions, it's clear that they would then move on to consider predisposition and not conclude the entrapment inquiry. And that's the interpretation the government took below. Cabrera harps on certain things that the government said at the conference. But if you look at all of the government's statements on pages 688 to 689 of the appendix, the government made exactly this point and pointed out that because the charge started with this language about any evidence, it would essentially lower the threshold beyond even what the law requires, such that any evidence whatsoever about inducement, even if not credible, would satisfy the defendant's burden on inducement. Well, that's kind of my concern, Ms. Sassoon. I mean, look, this standard was and still is that, I think, that you've got to establish, the defendant has to establish a preponderance that the government initiated the offense. But we were concerned in Braver that, oh, well, that's just too confusing for these poor jurors who won't be able to handle two different standards, one a preponderance on the part of the defendant, the other proof beyond a reasonable doubt on the part of the government. I think, frankly, we undersold juries on their capacity to manage those types of questions. But it seems that we've now come up with something that's equally confusing. And the instruction here says that if you don't find any evidence, then fine, it's over. But if you find the government did initiate, and isn't there at least a concern that the jury will have interpreted that finding to be a finding beyond a reasonable doubt, which it clearly is not, that's not the requirement. Based on the instruction as a whole, as the court has to interpret it under Wilkerson, because of the framing that Judge Vaila gave at the start, the government does not think that it's confusing. But in any event, there was no objection at the charging conference to the omission of the language of some evidence. And perhaps that's because Cabrera himself recognized that this instruction was more favorable to him than requesting a some evidence instruction. And under Skelly, the failure to object to the omission of the particular language you're now claiming should be there on appeal means that that particular objection is forfeited. And so what the court actually has to look at is, did Cabrera request something at the charge conference that accurately reflected the law in all respects, and he did not for two principal reasons. First, on appeal, Cabrera emphasizes this idea that his burden is relatively slight with respect to inducement. Now, that quote is from this circuit's decision in Mayo, and it's been repeated several times in other cases, and it actually has very little to do with the quantum of proof for inducement. What the court has said is that the defendant's burden is relatively slight on inducement because he does not have to show that the government pressured the defendant, coerced the defendant, forced him. It's relatively slight because all the defendant has to show is the government initiated or solicited the offense. So that's what relatively slight is talking about. It's not talking about the quantum of proof. With respect to the quantum of proof, this circuit has emphasized that it's not a hollow requirement, that it is by a preponderance of the evidence, and that it is more than just evidence. It has to be credible evidence. And so what Cabrera asked the court to insert actually would have been an inaccurate statement of the law if all the court put in was evidence that the government did initiate. And so for that reason, because the request did not accurately reflect the law, this sum evidence argument on appeal was forfeited and has to be reviewed for plain error. There's no decision in this circuit that has found error with the type of instruction that Judge Vela gave to the jury. And as I've argued, this instruction is in fact more favorable in certain ways than a sum evidence instruction, which has... Let's assume about the other issue briefly before you go. How can it be that testimony that says not just, I thought there was evasive driving. I mean, I can see that as being analogous to, I thought the man was intoxicated or I saw a drunk on the street. It's an opinion derived from more specific observations, but that seems like lay opinion to me. But to go beyond that and say, most drug dealers don't do that, which came as something of a surprise to me because I've seen so many cases where officers say this fellow was engaging in evasive driving and that gives us reasonable suspicion or supports probable cause or something. But whether it's accurate, how can it be that to go and say, in my experience, drug dealers don't do that except the experienced ones. And I conclude from this that he was a better than average drug dealer. In a case where we're talking about this narrowly balanced issue of predisposition, first of all, how is that not erroneous to admit that testimony? And secondly, why shouldn't we think that's prejudicial in an entrapment case to have an officer say effectively, I'm a DEA agent, I know drug dealers, and this guy looked to me like an experienced drug dealer? Yes, your honor. So I think the real dispute here is with respect to the third prong of the rule 701 analysis, whether this was really expert testimony because it was based on specialized knowledge and then also whether- Well, that's one of the issues. It might not even be legitimate expert testimony to the extent that it goes so far as to say, I think the guy was guilty. Yes, your honor. Well, under the law, an opinion can get at certain issues that are kind of the core issues of the trial or render an opinion about something that's in dispute between the parties or goes to the ultimate issue if it satisfies the other requirements of the rule and is helpful to the jury. Here, unlike some of the cases where this circuit has concluded there was an improper opinion about the ultimate issue, it was not based on the overall investigation or hearsay from confidential informants. It was based on the agent's personal perceptions and it was really limited to that, his experience with respect to counter-surveillance techniques and what he did and what the agent observed that reflected that. Well, would this be acceptable testimony if it didn't come from a DEA agent but just came from an observer on the street, a random bypasser who volunteers the testimony to the government that, I watched this guy driving. He was doing all these weird things. I thought that he was engaged in evading somebody who was following him. Would that be acceptable testimony? Is that something a lay person can say? That would be acceptable testimony if it satisfied what the, for example, advisory committee notes have said and what this circuit has said where if there's particularized knowledge, and that's distinct from specialized expert knowledge. If there's particularized knowledge that derives from a witness's experience by virtue of his position in a business or some other experience that he had, that's permissible and that's distinct from specialized knowledge. So, for example, you can have a lay person testify about the fact that a substance appeared to be if he was embedded in a drug organization for 10 years. The average juror has not been in a drug organization for 10 years, but the reasoning process is one that is familiar to a juror that an average juror could become capable of doing if that juror spent 10 years in a drug organization. So, if you have a lay witness who, for some reason, has had five years of experience observing cars, that's a reasoning process that would be evident to a jury even if that juror has not engaged in that process. And could that person say, and I live in a neighborhood with a lot of drug dealers and I know drug dealers, this guy was behaving like a drug dealer. Is that a lay opinion? I don't think a generalized statement, this person's behaving like a drug dealer would be appropriate, but if there were more discrete, concrete observations about I've lived in this this is what I routinely observe and this is how the conduct aligned with what I routinely observe, I think that's more similar to our case. And so, you have the example of the drug organization, you have the example in the Thornhill case where someone who had been in the army was allowed to testify as a lay person about the type of gun. That's distinct from Haynes, which Cabrera relies on, where you have a border agent who testified about how a fuel tank works. I could stay at the five months and I still couldn't tell you how a fuel tank works. But counter surveillance techniques, that's a much more accessible reasoning process to a jury and that's what the distinction between the lay and expert opinion is really getting at. I'm also happy to address for the court why if the court were to find any errors, those errors were harmless, if that would be helpful. Well, we're well over. Let me see if any of the other judges have any questions. No, I'm fine. No. So, let's rest there. We'll now come back to Mr. Habib for two minutes of rebuttal. You're on mute, Mr. Habib. Mr. Habib, you're... So, I am. I apologize. Could I ask you just to start with the testimony of the agent? Yes, Your Honor. And I guess my question is, why would that not be harmless? If we assume that it was wrong to allow him to make a conclusion from what he observed, the defense here, as I understand it, was not that the defendant had not been in a drug deal or even an experienced one. It's that he was a reformed one, that he had gotten out of the business. Is that wrong? No, Your Honor. The defense was that Cabrera had never engaged in any drug transaction prior to being approached by Marcos. As Judge Lynch has a sufficient basis to find that Cabrera was predisposed and to reject his entrapment defense. And that's just what the government urged the jury to do in its summation. It told the jury that San had testified that Cabrera engaged in sophisticated counter-surveillance techniques of a sophisticated drug dealer. That both opined directly on Cabrera's guilt and it rested on the agent could only have compared Cabrera to the average drug dealer by drawing on his experience in other drug investigations. That's why his opinion rests on his specialized knowledge, because a lay person could not possibly compare this driver's conduct to that of other drug dealers. But I mean, he said that he was concerned that he was under DEA surveillance, right? Yes. That's what Mr. Cabrera said in his testimony. So he's been dealing with in drugs for almost a month with Mr. Marcos, and he's concerned that he's under surveillance. So, I mean, it would seem that the testimony then of the agent is not really worth much because the defendant himself admitted that he was concerned about being under surveillance. And so Your Honor, I think the difference is between awareness that one may be under surveillance, which anybody engaged in illegal activity might be, and an opinion from the case agent who was responsible for walking the jury through the bulk of this proof in this case, an opinion from that case agent that based on his experience on which the government asked him to draw, not only was vis-a-vis the average drug dealer in the drug trade. And that testimony, if accepted, as the government urged the jury to do, would suffice to establish predisposition and defeat the entrapment defense. Anybody engaged in a drug transaction might be concerned about detection, but it's quite another thing to hear the case agent, a person who this court has cautioned is often treated by the jury with an air of authority and deference in light of his expertise, opine that because of the way the defendant drove, it could be inferred, it could be concluded that he was more experienced than average. He was savvier than average. He was sophisticated in the government's words. If I may, just one minute on the, unless there are other questions on the evidentiary issue, if I may say one thing about the instructional issue. First, this claim is preserved. At SPA 3, the defense told Judge Vela that there just has to be, quote, some evidence. And under this court's decision in Hassan, no more is required to avoid plain error review. On the merits of the instruction, Judge Jacobs, you have it right. There's a hole. But because of the posture in which this preserved claim comes to this court, it's the government's burden to demonstrate harmlessness beyond a reasonable doubt. And if there's doubt about how jury and equipoise would have interpreted this instruction, if there's doubt about whether a jury and equipoise would have proceeded to the central issue in any entrapment case, which is predisposition, or in fact would have taken the off-ramp urged by the government, that doubt must be reserved in Cabrera's favor. Finally, again, at the risk of repetition, the government argued for this charge below, and it fought Cabrera's counterproposal for the express purpose of heightening the standard of proof above some evidence. The government said that's not the standard. A finding is now required, and that's simply not this court's law. So I take Judge Sullivan's point that the instruction may even be susceptible to a more damaging construction from Cabrera's vantage point. The jury may indeed have interpreted the instruction to require a decisive finding, or finding beyond a reasonable doubt, as that was the standard discussed in the same paragraph of the charge. But because we're here in a posture where it's the government's burden to show harmlessness beyond a reasonable doubt, and because there's real doubt about how a lay jury would have interpreted this instruction, and in particular what to do in the whole, or in the position of equipoise where this case likely lies, the government can't satisfy its burden here. All right. Well, thank you both. Well argued. We'll reserve decision. Have a good day.